PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Russell, S.J.

COMMONWEALTH OF VIRGINIA

v. Record No. 161013

JOSHUA CHARLES MOSELEY

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
JUNE 8, 2017

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals of Virginia erred in concluding that the evidence was insufficient to sustain a defendant's convictions for breaking and entering and grand larceny.

## I.    Facts and Proceedings

Joshua Charles Moseley ("Moseley") was tried by the Circuit Court of the City of Hampton ("circuit court") upon an indictment charging two counts of breaking and entering, in violation of Code § 18.2-91, and two counts of grand larceny, in violation of Code § 18.2-95. Following a bench trial, Moseley was convicted on all four counts and sentenced to forty years' imprisonment, with thirty-four years suspended.

At trial, the Commonwealth presented evidence that on June 3, 2013, between noon and 5:15 p.m., a burglary occurred at John and Mary Ann Winsley's home located on Wilderness Road in Hampton, Virginia. Mr. Winsley testified that when he returned home from work the door leading into his garage was broken open. Mr. Winsley called police, who then dusted for fingerprints while he and his wife inventoried their missing items. Among other things, the Winsleys testified that their collection of rare coins and paper currency was missing.

Captain Susan Canny of the Hampton police department testified that she drove past the Winsley residence at around 3:00 p.m. on June 3, 2013. As she drove past, Captain Canny

inadvertently "cut off" another driver who was "pulling off the curb" next to the Winsley property. The other vehicle stopped and Captain Canny testified that she had a "nice clear view" of the driver, whom she later identified as Moseley. Captain Canny took notice of Moseley because she lived nearby, and the residents of the community "watch out for everybody." She testified that Moseley "looked startled when he saw [her]."

Jonathan Ellis testified that on June 17, 2013, two weeks after the first burglary, his home located on Fort Worth Street was burglarized between 10 a.m. and 3:40 p.m. Mr. Ellis testified that when he returned home from work he discovered the back door was unlocked. Inside, Mr. Ellis found his video games strewn across the living room floor and his wife and daughter's jewelry boxes overturned in their bedrooms. Mr. Ellis testified that various pieces of jewelry were missing from those boxes.

Officer Eric Rausch of the Hampton Police testified that on that same day he responded to a call regarding an attempted burglary in the Beauregard Heights area of Hampton. Officer Rausch testified that the caller described the subject as "a black male wearing a gray T-shirt, black shorts, in his mid-to-late 20s." When Officer Rausch arrived in the area, he observed Moseley walking down East Little Back River Road. Moseley fit the caller's description, so Officer Rausch stopped and spoke with him. June 17, 2013, was not "a particularly cold day," but Moseley was carrying a pair of "heavier knit glove[s]" in one of his pockets. Officer Rausch testified that the gloves were similar to those worn by "grocery store workers [when] moving frozen foods back and forth." Moseley told Officer Rausch "that they were his workout gloves." Officer Rausch took Moseley into custody.

Captain Canny testified that she heard the report of the attempted burglary over her police radio. The report indicated that the attempted burglary took place at the corner of Wilderness

2

and Beauregard Heights, which was behind her home. Captain Canny was "very concerned about the burglaries in the area," so she went to the police station to speak with the detectives. When she arrived, Captain Canny immediately recognized Moseley as the man she had seen pulling away from the Winsley residence two weeks earlier.

At approximately 10:30 p.m. on June 17, 2013, tow truck driver Robin Shuffler received a call to tow a white 1990 Crown Victoria away from Willow Oaks Apartments, which was "right across from Little Back River Road." When he arrived, Shuffler observed that all four of the vehicle's windows were down and the keys were inside. Shuffler towed the vehicle to a secure lot, where he began to inventory its contents. As he was inventorying, Shuffler discovered a "bag of jewelry and some marijuana," which prompted him to call his boss. Shuffler's boss told him not to disturb anything, and the police were contacted the following morning.

Detective Corporal Erik Rummell testified that the next morning, on June 18, 2013, he executed a search warrant for the interior of the white Crown Victoria. Detective Rummell testified that the glove box contained an electric bill, which was addressed to Joshua Moseley and dated March 28, 2013. In addition, the center console of the vehicle contained: 1) Moseley's Virginia identification card, 2) Moseley's Portsmouth library card, 3) a box of suspected marijuana, 4) a bag of jewelry, and 5) various paper bills and coins, some of which were in protective sleeves. According to Detective Rummell, the "stuff [was] all jumbled up . . . they were all just kind of mingled together." The Winsleys and the Ellis' confirmed that several of the items found in the console had been stolen from their homes in the two burglaries.

Melissa Cook, the property manager of the address listed on Moseley's electric bill, testified that she had seen Moseley driving the vehicle "on a regular basis." Cook explained that

3

Moseley drove the car "[p]retty much on a daily basis for the time that [he] stayed there." Nevertheless, Cook was unable to recall the specific dates or the period of time during which she had seen Moseley driving the car. On cross-examination, Detective Rummell acknowledged that the white Crown Victoria was not registered to Moseley, but was instead registered to Kelton Adams-Elkins.

Moseley moved to strike the evidence at the close of the Commonwealth's case-in-chief and again at the close of all of the evidence. He argued that the Commonwealth failed to prove that he possessed the stolen items found in the Crown Victoria, and therefore the Commonwealth was not entitled to the inference that he committed the larcenies and burglaries. Moseley argued that he could have sold the vehicle to Kelton Adams-Elkins, the registered owner at the time of trial, in the time since Cook had seen him driving it on a regular basis. Moreover, because the windows were down, anyone in the area could have "put that stuff in the car" before it was towed away. The circuit court rejected both arguments and denied both motions, explaining:

> The operative word here was that some of the stolen property was commingled [] with the identifying documents. I understand what you were saying was that [] maybe the documents . . . were there and all this got dumped on top; and he didn't see them in the vehicle. Maybe somebody else did it. [But] [w]e don't have that because . . . the officer said the items were mixed up together.

The circuit court found "the evidence sufficient despite the circumstantial nature." Based on that evidence, the court then found Moseley "guilty of each of the offenses beyond a reasonable doubt."

On July 17, 2014, Moseley moved to set aside the verdicts. During a hearing on that motion, the circuit court questioned defense counsel as to which inferences could be reasonably drawn from the evidence:

4

THE COURT:  Let me see if I can break this down. Do you concede it's a reasonable inference that, first, the person that stole the property in each case committed the burglary in each case?

[Defense counsel]:  Yes, sir.

THE COURT:  Do you think it's a reasonable inference that the same person committed both? Less strong but both?

[Defense counsel]:  It's certainly possible, Your Honor. I think it's a conclusion that could be drawn. I don't think it's the only conclusion to be drawn from the evidence.

Nevertheless, Moseley maintained that the evidence did not support an inference that he committed the offenses because the Commonwealth failed "to establish he was in possession of the vehicle or of the property inside the vehicle."  The circuit court took the motion under advisement to further consider whether "there [was a] reasonable hypothesis of somebody else's possession."  By order dated August 26, 2014, the circuit court "conclude[d] that there [was] no sufficient basis for vacating the judgments of conviction" and denied Moseley's motion.

Moseley appealed his convictions to the Court of Appeals, and a three judge panel reversed all four convictions in an unpublished opinion. *Moseley v. Commonwealth*, Record No. 0881-15-1, slip op. at 1 (June 7, 2016).  The Court of Appeals initially ruled that the burglary and larceny inferences were inapplicable because the evidence did "not prove that [Moseley] had exclusive dominion and control over the stolen property."  Without the benefit of those inferences, the Court of Appeals then held that the evidence was insufficient because it "fail[ed] to link [Moseley] to the offenses beyond a reasonable doubt."  The Commonwealth appealed to this Court, and we granted its appeal on the following assignment of error:

The Court of Appeals erred in holding that the evidence was insufficient to support Moseley's burglary and grand larceny convictions because the Court of Appeals improperly applied the standard of review, considered each piece of evidence in isolation, relied on unsupported hypotheses of innocence reasonably rejected

5

by the trial court, and refused to consider affirmative evidence of Moseley's guilt.

## II. Analysis

### a. Standard of Review

In a criminal case appealed on sufficiency of the evidence grounds, "[a]n appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citation omitted). We review the sufficiency of evidence supporting a conviction "in the 'light most favorable' to the Commonwealth." *Bowman v. Commonwealth*, 290 Va. 492, 494, 777 S.E.2d 851, 853 (2015) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). Our inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself "is entitled to consider all of the evidence, without distinction, in reaching its determination." *Hudson*, 265 Va. at 512-13, 578 S.E.2d at 785. And "[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Muhammad v. Commonwealth*, 269 Va. 451, 479, 619 S.E.2d 16, 32 (2005). That judgment is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it." Code § 8.01-680; *Viney v. Commonwealth*, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005). "These principles apply 'with equal force' to bench trials no differently than to jury trials." *Vasquez v. Commonwealth*, 291 Va. 232, 249, 781 S.E.2d 920, 930 (2016).

b. Sufficiency of the Evidence

Where, as here, the Commonwealth relies wholly on circumstantial evidence to carry its burden of proof beyond a reasonable doubt, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence." *Commonwealth v. Smith*, 259 Va. 780, 783, 529 S.E.2d 78, 79 (2000) (quoting *LaPrade v. Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950)). The Commonwealth must "overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt." *Id*. This requires an unbroken evidentiary chain of necessary circumstances, which satisfies "the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty." *Wright v. Commonwealth*, 292 Va. 386, 397, 789 S.E.2d 611, 616 (2016) (quoting *LaPrade*, 191 Va. at 418, 61 S.E.2d at 316).

Moseley does not dispute that the larcenies and burglaries were actually committed. Rather, he argues that the Commonwealth's circumstantial evidence failed to prove beyond a reasonable doubt that he was the criminal agent who committed them. Moseley maintains that there is a reasonable hypothesis that he "was in the area of the burglaries for a purpose other than committing the crimes and that . . . someone else . . . placed the stolen items in the vehicle and abandoned it in the parking lot." We disagree.

The reasonable-hypothesis principle "merely echoes 'the standard applicable to every criminal case.'" *Vasquez*, 291 Va. at 250, 781 S.E.2d at 930 (quoting *Cook v. Commonwealth*, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983)). It is "simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Hudson*, 265 Va. at 513, 578 S.E.2d at 785. Therefore, no matter how this burden is framed, the factfinder ultimately

remains responsible for weighing the evidence. In that capacity, the factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant. *Id*. at 514, 578 S.E.2d at 786. Here, the circuit court rejected Moseley's theory that "somebody else did it," and instead found "the evidence sufficient despite the circumstantial nature."

The pertinent question in this appeal is whether a rational factfinder, in light of all the evidence, could have rejected Moseley's theories of innocence and found him guilty beyond a reasonable doubt. We emphasized the importance of this totality-of-the-evidence analysis in *Hudson*. There, the defendant was convicted of murdering his wife, whom he argued committed suicide. 265 Va. at 507, 578 S.E.2d at 782. The Court of Appeals reversed the defendant's conviction because "there [was] some evidence" to support the defendant's hypothesis of innocence. *Id*. at 513, 578 S.E.2d at 785. The Commonwealth appealed and we reinstated the defendant's conviction, clarifying that "[t]he issue upon appellate review [was] not whether there is some evidence to support these hypotheses [of innocence]." *Id*. Instead, "[t]he issue [was] whether a reasonable jury, upon consideration of all the evidence, could have rejected [the defendant's] theories in his defense and found him guilty of murder beyond a reasonable doubt." *Id*. We concluded that a rational juror could have rejected the defendant's theory of innocence as being unreasonable, based "upon consideration of all the evidence and the reasonable inferences that flow from that evidence." *Id*. at 517, 578 S.E.2d at 787-88.

Here, too, the totality of the evidence was sufficient for a rational factfinder to reject Moseley's hypothesis that someone else was the criminal agent who placed the stolen items in the white Crown Victoria. Moseley was seen "pulling off the curb" next to the Winsley residence during the window of time when that home was burglarized. Moseley was then

8

arrested less than a month later in the area of a second burglary because he matched the description of the suspect in an additional attempted burglary. At the time of his arrest, Moseley possessed "heavy knit" freezer gloves even though June 17, 2013, was not "a particularly cold day." Hours later, while he was in custody, a vehicle Moseley routinely drove was towed from an apartment complex where it sat abandoned with the windows down and keys inside. The center console of that vehicle contained various items stolen from both homes, which were commingled with two identification cards bearing Moseley's name.

Viewing this evidence in the light most favorable to the Commonwealth, we cannot say, as a matter of law, that no rational factfinder could have found Moseley guilty of each offense beyond a reasonable doubt. As the prevailing party below, the Commonwealth is entitled to the benefit of all reasonable inferences that flow from the evidence. That includes, in this case, two inferences defense counsel conceded were reasonable at trial. First, it is reasonable to infer that the same person who committed each larceny also committed the related burglary. Second, it is reasonable to infer that the same person committed both burglaries. Taken together, these concededly reasonable inferences allowed the factfinder to infer Moseley's involvement in all four offenses based upon his involvement in one.[*]

The Court of Appeals' conclusion that the circumstantial evidence "fail[ed] to link [Moseley] to the offenses beyond a reasonable doubt" resulted from a fragmented assessment of the record. The Court of Appeals deemed Moseley's connection with the white Crown Victoria

---

[*] The Court of Appeals held that the larceny and burglary inferences did not apply in this case because the evidence was insufficient to prove that Moseley had exclusive dominion and control over the recently stolen property. Assuming, without deciding, that the Court of Appeals was correct that the evidence of Moseley's recent possession of the stolen properly was insufficient, the remaining evidence was nonetheless sufficient to sustain Moseley's convictions.

to be merely suspicious; Moseley's presence in the vicinity of both burglaries to be merely suspicious; and Moseley's possession of freezer gloves to be merely suspicious. Rather than weighing this evidence collectively, the Court of Appeals improperly scrutinized each piece of evidence in isolation. The minimizing effect of that fragmented analysis was then compounded by the Court of Appeals' failure to afford proper deference to the province of the factfinder.

We hold that a rational factfinder could reasonably reject Moseley's theories in his defense and find that the totality of the suspicious circumstances proved beyond a reasonable doubt that Moseley was the criminal agent in each of the offenses charged. *Williams,* 278 Va. at 193, 677 S.E.2d at 282l; *Jackson,* 443 U.S. at 318-19. The circuit court's finding to that effect was therefore not plainly wrong or without evidence to support it. The Court of Appeals accordingly erred in reversing the circuit court's judgement.

### III. Conclusion

For the reasons stated, we will reverse the judgment of the Court of Appeals and reinstate the circuit court's order of conviction.

*Reversed and final judgment*.


JUSTICE GOODWYN, dissenting.

I respectfully dissent. Moseley was charged with two counts of burglary and two counts of grand larceny. I believe the Court of Appeals was correct in concluding, upon viewing the evidence presented at trial in the light most favorable to the Commonwealth, that such evidence is not sufficient to prove beyond a reasonable doubt that Moseley broke and entered the dwelling of Jonathan and Victoria Ellis on or about June 17, 2013 with the intent to commit larceny, or that Moseley stole their property on that day. The same is true concerning its similar conclusion regarding the charges related to the burglary and larceny suffered by the Winsleys on June 3,

10

2013.  The Commonwealth was required to prove the elements of those crimes beyond a reasonable doubt.  It failed to do so.  I disagree with the majority's conclusion that "the totality of the suspicious circumstances" is enough to prove each element of each charge beyond a reasonable doubt.

The Court of Appeals correctly concluded, the Commonwealth conceded in its argument before the Court of Appeals, and the majority assumes in its opinion, that the circumstantial evidence presented in this case does not prove that Moseley had exclusive dominion and control over the stolen property found in Kelton Adams-Elkins' Crown Victoria.  Thus, it is undisputed that neither the larceny inference nor the related burglary inference applies.  *See supra* n.1.

Assuming that the majority is correct in aggregating the other inferences that can be drawn from the circumstantial evidence related to the disparate crimes, those proper inferences still do not constitute proof beyond a reasonable doubt regarding Moseley's guilt, absent a larceny or burglary inference.[*]  In other words, if it may not be inferred, based upon his electric bill and identification card being found in the Crown Victoria along with the stolen items, that

_____

[*] In its opinion, the Court of Appeals correctly noted:

> Once the occurrence of a larceny has been established, the unexplained possession of recently stolen goods permits the fact finder to infer that the possessor is the thief.  A variation of the larceny inference also may apply to prove a charge of breaking and entering.  Upon proof of a breaking and entering coupled with a simultaneous theft, the exclusive possession of the stolen goods shortly thereafter . . . has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering.
>
> The inference, however, arises only when the accused has been shown to be in exclusive possession of recently stolen property, regardless of how much other incriminating evidence the Commonwealth has marshalled.

*Moseley v. Commonwealth*, Record No. 0881-15-1, slip op. at 7 (June 7, 2016) (citations, internal quotation marks and alterations omitted).

11

Moseley committed the burglaries and the larcenies of those stolen items, all the other inferences and suspicious circumstances, even when stacked upon one another and viewed in the best possible light in favor of the Commonwealth, do not reach the proof beyond a reasonable doubt standard that the Commonwealth was required to satisfy as to each element of each crime charged.

Therefore, I do not believe that the Court of Appeals erred. I would affirm the Court of Appeals for the reasons stated in its unpublished opinion, *Moseley v. Commonwealth*, Record No. 0881-15-1 (June 7, 2016).