COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and AtLee
Argued by videoconference

UNPUBLISHED

STEPHON TAZEWELL BENNIEFIELD, S/K/A
  STEPHON TAZWELL BENNIEFIELD

v.      Record No. 1242-19-2

COMMONWEALTH OF VIRGINIA

STEPHON TAZEWELL WOODBURY

v.      Record No. 0001-20-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
SEPTEMBER 29, 2020

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Gregory L. Rupe, Judge

Daniel W. Hall (Law Office of Daniel W. Hall, on briefs), for
appellants.

A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellee.

On December 12, 2018, and January 30, 2019, a grand jury for the Circuit Court of the

City of Richmond ("circuit court") indicted appellants Stephon Tazewell Benniefield

("Benniefield") and Stephon Tazewell Woodbury ("Woodbury") each on: one count of

first-degree murder, in violation of Code § 18.2-32; one count of use of a firearm in the

commission of murder, in violation of Code § 18.2-53.1; and one count of malicious wounding,

in violation of Code § 18.2-51.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At the conclusion of the Commonwealth's evidence at their joint jury trial, Benniefield and Woodbury made separate motions to strike based on the sufficiency of the Commonwealth's evidence of identity. The circuit court denied those motions.

The jury subsequently found Benniefield guilty of first-degree murder, use of a firearm in the commission of murder, and assault and battery,[1] and Woodbury guilty of all offenses. In accordance with the jury's recommendation, the circuit court sentenced Benniefield and Woodbury to a total of twenty-eight and thirty-two years' imprisonment, respectively.[2]

On appeal, Benniefield argues that the circuit court erred in denying his motion to strike for two reasons. First, because the Commonwealth failed to prove his identity as a perpetrator of any of the offenses beyond a reasonable doubt. Second, because the Commonwealth's evidence was insufficient to establish his guilt of either malicious wounding or assault and battery. Similarly, Woodbury argues that the circuit court erred in denying his motion to strike the murder charge because the Commonwealth failed to prove his identity as a perpetrator of that offense beyond a reasonable doubt. Woodbury also argues that the evidence was insufficient to convict him of use of a firearm in the commission of murder and malicious wounding.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." Scott v. Commonwealth, 292 Va. 380, 381 (2016) (citing Baldwin v. Commonwealth, 274 Va. 276, 278 (2007)). Accordingly, we will "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

---

[1] Assault and battery is a lesser-included offense of malicious wounding. Boone v. Commonwealth, 14 Va. App. 130, 132 (1992).

[2] The sentencing order identifies Woodbury's sex as "female." Accordingly, we remand for clarification of that order.

all fair inferences to be drawn therefrom." Kelley v. Commonwealth, 289 Va. 463, 467-68 (2015) (quoting Parks v. Commonwealth, 221 Va. 492, 498 (1980)).

On November 2, 2018, Woodbury approached Vincent Lewis ("Lewis") and asked him if Jerome Williams ("Williams"), who went by the name "Shorty Rome," had stolen some items from Woodbury's car. Woodbury believed that someone named "Rome" or "Rone" stole the items. Lewis told Woodbury that Williams could not have stolen the items because he was in jail at the time. Woodbury's father, Benniefield, was not present during this conversation, but he "came like three minutes later around the corner." Both Woodbury and Benniefield gave Lewis their phone numbers and asked him to contact them if Lewis came across the individual who stole Woodbury's items, because "they'd rather have their stuff back than cause them any problems."

On November 5, 2018, Benniefield and Woodbury noticed Weldon Tyrone Young ("Young") standing at a laundromat counter scratching off lottery tickets. Benniefield and Woodbury, along with Woodbury's cousin, Tyshawn Hargrove ("Hargrove"), walked into the laundromat to confront Young about the stolen items. Woodbury asked Young his name, to which Young responded "Rone." After Woodbury mentioned that someone named "Rone" stole items out of his car, Young responded that he was "not that Rone."

When Young moved a laundry basket out of the way and tried to walk towards the exit, Woodbury began punching him in the face. Young tried again to move towards the exit, but Benniefield pushed him back towards Woodbury. Woodbury and Hargrove proceeded to punch, kick, and stomp Young as Benniefield stood by the laundromat exit. After the beating, Woodbury, Hargrove, and Benniefield left the laundromat.

Seven minutes later, Woodbury's brother, Barry Woodbury ("Barry") parked his girlfriend's car outside their apartment, which was roughly a mile away from the laundromat.

- 3 -

Benniefield, Woodbury, and Hargrove got out of the car. Shortly thereafter, Williams rode past the car on his bicycle.

Woodbury began chasing Williams with his right arm outstretched. Williams fell off his bike and tried to keep running. Benniefield joined, and both he and Woodbury chased Williams with their arms outstretched. A "puff of smoke" came out of Benniefield's hand, "as if he ha[d] a big gun and is firing a gun." Williams ran down the street in front of the rental office, while Benniefield, Woodbury, and Hargrove ran back to the car. Benniefield, Woodbury, Hargrove, and Barry drove out of the complex roughly a minute later. Williams died on the scene.

After an autopsy, the medical examiner determined that Williams's cause of death was a gunshot wound that traveled through his back to his chest. Two casings and two bullets recovered from the scene were determined to have been fired from two different guns. After executing a search warrant at Benniefield's home, officers recovered the clothing that Woodbury wore on the day of the beating and homicide.

At trial, the Commonwealth presented multiple surveillance videos that tracked Benniefield, Woodbury, Barry, and Hargrove's movements over approximately a forty-five-minute period prior to the homicide. In his testimony, Lewis identified Benniefield and Woodbury as the individuals that approached him to ask about Williams in the days leading up to the homicide. Additionally, Detective Jon Bridges ("Detective Bridges"), of the Richmond Police Department, testified that he had known Woodbury for eight-to-ten years and had "no doubt" that Woodbury was the person depicted in the surveillance footage as beating Young and first chasing after Williams. Detective Bridges also identified Benniefield as the person that pushed Young back towards Woodbury, and the second person that chased after Williams.

Detective Bridges further testified that several days after the homicide, he separately interviewed Benniefield, Woodbury, and Hargrove. Hargrove wore similar clothing as that

- 4 -

depicted in the surveillance footage to his interview with Detective Bridges. During Woodbury's interview, Woodbury told Detective Bridges that he was visiting Benniefield on the day of the shooting and confirmed that he asked people in the community if they knew who stole items out of his car. When Detective Bridges showed Woodbury still images from one of the surveillance videos, Woodbury identified Hargrove and Barry. However, Woodbury did not identify himself or Benniefield.

Additionally, Detective Bridges testified that during Woodbury's interview, he noticed that Woodbury had an injury on his right index finger and left thumb. Detective Bridges reviewed one of his prior interviews with Woodbury where Woodbury signed documents with his left hand but appeared to be potentially ambidextrous.

At the conclusion of the Commonwealth's evidence, Woodbury moved to strike the murder charge, and Benniefield moved to strike all charges, based on the sufficiency of the Commonwealth's evidence of identity. The circuit court overruled those motions because the sufficiency of the identity evidence was a "[j]ury question." In opening and closing arguments to the jury, Woodbury's trial counsel conceded that Woodbury participated in beating Young.

The jury subsequently found Benniefield guilty of murder, use of a firearm in the commission of murder, and assault and battery. The jury also found Woodbury guilty of murder, use of a firearm during the commission of a murder, and malicious wounding. These appeals follow.

## II. ANALYSIS

### A. Motions to Strike

"A motion to strike challenges whether the evidence is sufficient to submit the case to the jury." Linnon v. Commonwealth, 287 Va. 92, 98 (2014) (quoting Lawlor v. Commonwealth, 285 Va. 187, 223 (2013)). The elements of each offense are a question of law that this Court

reviews *de novo*.  Id. (quoting Lawlor, 285 Va. at 223).  However, "[w]hether the evidence

adduced is sufficient to prove each of those elements is a factual finding, which will not be set

aside on appeal unless it is plainly wrong."  Id. (quoting Lawlor, 285 Va. at 223-24).  "In

reviewing that factual finding, we consider the evidence in the light most favorable to the

Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom."

Id. (quoting Lawlor, 285 Va. at 224).  "After so viewing the evidence, the question is whether

any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt."  Id. (quoting Lawlor, 285 Va. at 224).

### 1.  Identity Evidence

On appeal, Benniefield argues that the circuit court erred in denying his motion to strike

because the Commonwealth failed to prove his identity as the perpetrator of each offense

charged beyond a reasonable doubt.  Similarly, Woodbury argues that the circuit court erred in

denying his motion to strike the murder charge because the Commonwealth's evidence was

insufficient to establish his identity as a perpetrator of that offense.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as

the perpetrator beyond a reasonable doubt."  Cuffee v. Commonwealth, 61 Va. App. 353, 363

(2013) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 423 (2003)).  Nevertheless, "[o]ur

inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself

'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"

Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting Commonwealth v. Hudson, 265

Va. 505, 513 (2015)).  "While no single piece of evidence may be sufficient, the combined force

of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a

conclusion."  Muhammad v. Commonwealth, 269 Va. 451, 479 (2005) (citing Hudson, 265 Va.

at 514).  Where the Commonwealth relied on "circumstantial evidence to carry its burden of

proof beyond a reasonable doubt, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence.'" Moseley, 293 Va. at 463 (quoting Commonwealth v. Smith, 259 Va. 780, 783 (2000)).

Here, there was sufficient evidence from which a rational trier of fact could have found that Benniefield and Woodbury were two of the perpetrators beyond a reasonable doubt. The Commonwealth presented surveillance footage that showed four males traveling together on the day of the beating and homicide, including two individuals that Woodbury positively identified as his cousin and brother. In his opening and closing arguments, Woodbury, as a trial tactic, conceded that he participated in the beating of Young at the laundromat. About seven minutes after that beating, the four men parked outside Barry's apartment, roughly a mile from the laundromat. Shortly thereafter, surveillance footage showed two men wearing clothing consistent with Woodbury and Benniefield chasing after Williams with their arms outstretched and a puff of smoke that looked as if a gun was fired. All of the surveillance videos were admitted as exhibits and were available to the jury to permit the jurors to draw their own conclusions regarding the identity of those depicted therein.

At trial, Detective Bridges testified that he had known Woodbury for eight-to-ten years and had "no doubt" that Woodbury was one of the perpetrators of the beating and homicide. Detective Bridges also interviewed Benniefield during the course of the investigation and identified him in court as the person that pushed Young back towards Woodbury and the second person that shot at Williams. Additionally, Lewis identified Benniefield and Woodbury in court as the individuals who approached him three days prior to the homicide to ask if Williams had broken into Woodbury's car.

On appeal, Benniefield and Woodbury challenge the credibility of Lewis's and Detective Bridges's identifications and argue that because no witness identified them in the surveillance

- 7 -

footage from the apartment complex, that the Commonwealth failed to meet its burden of establishing their identities. Benniefield and Woodbury also argue that "Lewis was impeached by his actions after the incident, his prior felony record, and his motive to testify."

However, "[t]he sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." Ragland v. Commonwealth, 67 Va. App. 519, 529-30 (2017). "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." Smith v. Commonwealth, 56 Va. App. 711, 718 (2010) (quoting Swanson v. Commonwealth, 8 Va. App. 376, 379 (1989)). "So long as a witness deposes as to facts[,] which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached" goes only to the jury's consideration of the weight and sufficiency of the testimony. Id. (alteration in original) (quoting Swanson, 8 Va. App. at 379). If the fact finder "sees fit to base the verdict upon that testimony there can be no relief in the appellate court." Id. at 719 (quoting Swanson, 8 Va. App. at 379). Ultimately,

> [w]e are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature . . . [t]he defect, if there be one, goes to weight and not to substance.

Curtis v. Commonwealth, 11 Va. App. 28, 33 (1990) (alteration in original) (quoting Manson v. Brathwaite, 432 U.S. 98, 116-17 (1977)).

Here, the jury was entitled to consider all of the direct and circumstantial evidence of identity, including Lewis's and Detective Bridges's identifications, as well as the quality of the videos and what they depicted. The credibility of the identifications made at trial affects only the weight of that evidence, but the jury was entitled to rely on those identifications as well as on the

videos themselves as both direct and circumstantial evidence of guilt. This Court has no authority to substitute its judgment for that of the jury as to whether or not the video footage accurately depicted Benniefield and Woodbury as perpetrators.

Moreover, the Commonwealth presented evidence from which a rational trier of fact could have found that Benniefield and Woodbury had a motive to seek out a man named "Rome" or "Rone." Although motive is not a requisite element of murder, it is "a circumstance tending to prove the guilt of the alleged perpetrator" that is "relevant and probative on the issue of identity of the criminal agent." Cantrell v. Commonwealth, 229 Va. 387, 397 (1985). Here, the evidence showed that in the days leading up to the homicide, Benniefield and Woodbury actively looked for a person named "Rome" or "Rone," who they thought stole items out of Woodbury's car. When Woodbury and Benniefield asked Lewis about Williams, who they knew as "Shorty Rome," they gave Lewis their numbers and told him that they would "rather have their stuff back than cause them any problems."

From the totality of this evidence, a rational trier of fact could have found that the Commonwealth established Benniefield and Woodbury's identity beyond a reasonable doubt. The circuit court thus did not err in denying Benniefield and Woodbury's motions to strike and submitting the case to the jury on the issue of their identity.

### 2. Assault and Battery

Benniefield also argues that the circuit court erred in denying his motion to strike because the Commonwealth's evidence was insufficient to establish that he was guilty of either malicious wounding or the lesser-included offense of assault and battery. An individual may be charged with assault and battery under Code § 18.2-57 if the Commonwealth successfully proves a battery, a common law criminal assault, or a common law tortious assault. Blankenship v. Commonwealth, 71 Va. App. 608, 620 (2020). "To sustain a conviction for battery, the

Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." Parish v. Commonwealth, 56 Va. App. 324, 330 (2010) (alteration in original) (quoting Wood v. Commonwealth, 149 Va. 401, 404 (1927)). A willful act is one that is "[v]oluntary and intentional, but not necessarily malicious." Willful, Black's Law Dictionary (11th ed. 2019). One's "unlawful intent may be imputed if the touching is 'done in a rude, insolent, or angry manner.'" Parish, 56 Va. App at 331 (quoting Adams v. Commonwealth, 33 Va. App. 463, 469 (2000)). The touching need not result in injury. Gnadt v. Commonwealth, 27 Va. App. 148, 151 (1998).

Shortly after Benniefield, Woodbury, and Hargrove entered the laundromat, Woodbury confronted Young, who was in the laundromat when they arrived. When Woodbury began to punch Young, Young tried to move towards the exit, but Benniefield shoved Young back towards Woodbury. A rational trier of fact could have found that Benniefield's shoving of Young was voluntarily and intentionally done to prevent Young from escaping. Accordingly, the circuit court did not err in denying Benniefield's motion to strike.

## B. Rule 5A:18

Woodbury further argues that because the evidence was insufficient to identify him as a perpetrator of the murder, and the murder was the predicate offense for the use of a firearm charge, this Court should reverse his conviction for use of a firearm. Additionally, he argues that the evidence was insufficient to establish his identity as a perpetrator of the malicious wounding

However, neither argument was preserved in the circuit court and Woodbury asks this Court to apply the "ends of justice exception" to Rule 5A:18 to reach the merits of each of these arguments. Rule 5A:18 provides that, "[n]o ruling of the [circuit] court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of

- 10 -

justice." "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." Holt v. Commonwealth, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220-21 (1997)). To invoke this exception, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Id. at 210 (quoting Redman, 25 Va. App. at 221-22).

"The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." Id. (quoting Brittle v. Commonwealth, 54 Va. App. 505, 514 (2009)). "[W]hen an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." Id. (alteration in original) (quoting Brittle, 54 Va. App. at 514). "[A]n appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." Id. (alteration in original) (quoting Redman, 25 Va. App. at 221). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Id. (alteration in original) (quoting Redman, 25 Va. App. at 221). "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Id. (quoting Flanagan v. Commonwealth, 58 Va. App. 681, 695 (2011)).

Here, Woodbury has failed to meet the heavy burden of establishing that the record contains affirmative evidence of innocence or lack of a criminal offense. The record does not affirmatively establish that Woodbury did not commit the murder and, accordingly, the record cannot affirmatively establish a lack of criminal offense with respect to the predicate offense

element of the use of a firearm charge. Additionally, the record does not affirmatively establish that Woodbury did not commit the malicious wounding. In fact, the record reflects Woodbury's concession that he participated in the beating of Young. Based on these circumstances, we cannot conclude that a clear injustice has occurred that would warrant the application of the ends of justice exception to Rule 5A:18. Accordingly, we decline to apply the ends of justice exception to Rule 5A:18 to Woodbury's argument, and therefore do not consider his argument that the evidence was insufficient to establish the predicate offense element or his identity with respect to the malicious wounding charge in this case.

## III. CONCLUSION

For the reasons stated above, we affirm the circuit court's judgment and remand for clarification of its sentencing order with respect to Woodbury.

<u>Affirmed and remanded.</u>