UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, AtLee and Raphael
Argued at Lexington, Virginia


CATHERINE NICOLE CHITTUM

MEMORANDUM OPINION* BY
v.     Record No. 0783-20-3      JUDGE RICHARD Y. ATLEE, JR.
JANUARY 25, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
James R. Swanson, Judge

Robert E. Dean (Rob Dean Law, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring,[1] Attorney General, on brief), for appellee.


Following a bench trial, the circuit court convicted appellant Catherine Nicole Chittum of

grand larceny after she transferred $163,600 belonging to her mother, held in a joint checking

account, to herself. On appeal, Chittum argues that she lacked the necessary intent to commit

grand larceny because (1) she had joint ownership in the account and her mother had granted her

power of attorney, and (2) she made the transfer with her mother's consent and at her behest.

Accordingly, she argues, the evidence is insufficient to support her conviction. For the following

reasons, we disagree and affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

I. BACKGROUND

"On appeal of criminal convictions, we view the facts in the light most favorable to the Commonwealth, and [we] draw all reasonable inferences from those facts." *Payne v. Commonwealth*, 65 Va. App. 194, 198 (2015).

Chittum is the adult daughter, and youngest of four children, of Henry Lee Roadcap, Sr. ("Henry") and Anita Loretta Roadcap ("Anita"). On March 22, 2017, Anita executed a general durable power of attorney, naming her husband and Chittum, "either of whom may serve alone," as her agent. Because Henry's health was failing, he wanted Anita to move in with Chittum and her family because Anita "needed a little help." Anita moved in with Chittum and her family in March 2017.

Henry passed away on June 1, 2017. The following week, Anita went with Chittum to a Member One Federal Credit Union branch and added Chittum as a joint account holder of an account that was previously in the names of Henry and Anita (the "Member One account").[2] Henry had two insurance policies that paid out after he died: a $200,246.58 death benefit from Genworth Financial and $2,616.36 from Settler's Life Insurance Company. Anita was the sole beneficiary of these policies. These funds were deposited into the Member One account. Using that money, Chittum paid off several of Anita's outstanding debts. She also wrote checks for health care expenses, utilities, and other bills. On July 10, 2017, Chittum wrote a check, naming herself as payee, for $163,600. The memo line on the check said "gift." On September 22, 2017, following a family dispute, Anita revoked the existing power of attorney and executed a new durable power of attorney, naming her son, Paul Roadcap, as her agent.

_____

[2] In her testimony, Anita described this visit to the bank, stating that she could not read the paperwork at the bank and that Chittum told her they were "just bank papers" when Anita asked what she was signing. She stated she signed because she trusted Chittum.

A grand jury charged Chittum with grand larceny. At trial, Anita testified that she did not authorize Chittum to transfer the $163,600. She emphasized that these insurance payouts, along with Social Security checks, were "all [she] had to live on." Anita testified that Henry told her that she could give Chittum $10,000 to assist on a down payment for a larger house. Anita said that she offered to give that money to Chittum, "and [Chittum] said she did not want it," believing she should receive more.

Chittum testified that she had deposited "$100 maybe" of her own money into the Member One account and that the vast majority of the account's funds came from insurance proceeds. She said that her mother told her "innumerable times" that she wanted Chittum to take money to pay down bills and that Henry had wanted Chittum to be able to purchase a bigger home. Chittum disclaimed any knowledge of the offer of $10,000 described by Anita.

In a detailed letter opinion, the circuit court found "little dispute as to most of the pertinent facts" and found Chittum guilty of grand larceny. Chittum received a sentence of five years in prison with all but nine months suspended.

## II. ANALYSIS

Chittum advances, on brief,[3] two primary arguments: (1) that she could not be guilty of

grand larceny because Anita had given her power of attorney and added her as a joint account

holder in the Member One account, and (2) that the $163,600 was a gift from Anita.[4]

---

[3] At oral argument, Chittum's counsel presented a number of arguments that were neither made before the circuit court, nor argued on brief. Much of these centered on language in the Member One membership application. For example, he relied on terms governing ownership of funds upon a joint account holder's death, failing to acknowledge that the referenced language is wholly irrelevant here, given that Chittum wrote herself the $163,600 check while Anita, the joint account holder, was alive.

 Furthermore, Chittum's counsel argued that the Member One membership application, by referencing the terms of the "Membership Account Agreement," incorporated that agreement into the record here by reference. He claimed that the language in the account agreement authorized Chittum's actions. Yet the account agreement was not offered into evidence or otherwise included in the trial record or provided to this Court. *See Nelson v. Middlesex Dep't of Soc. Servs.*, 69 Va. App. 496, 502 (2018) ("[U]nder basic principles of appellate review, we may not go beyond the record developed in the trial court." (quoting *Boyd v. Cty. of Henrico*, 42 Va. App. 495, 505 n.4 (2004) (*en banc*))).

 In addition to relying on "evidence" not in the record, Chittum's counsel failed to either make these arguments before the circuit court, or assign error encompassing this argument on appeal. As such, this argument is waived. Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."); Rule 5A:20 ("Only assignments of error listed in the brief will be noticed by this Court.").

[4] At oral argument, appellant's counsel repeatedly insisted, in response to the Court's questioning, that the Member One Account Agreement was included in the record. He told the Court that the agreement stated: "joint owners agree with each other, and with us, that all sums now paid in or hereafter paid in by one or all account owners, including all dividends thereon, are and will be owned by all account owners jointly and equally, regardless of their net contributions." When asked where the Court could find this language, he provided a reference that did not contain it. Even when he returned to make his rebuttal, having had time to search the joint appendix for a correct page reference, he failed to disclose that this language, and the document he ostensibly was quoting from, was not in the record. It took even more probing until he finally relented and admitted that it was, in fact, not in the record, or otherwise made available to the Court.

 Moreover, when asked repeatedly where he previously made and preserved certain arguments, appellant's counsel either evaded the question or provided seemingly random (or at best, irrelevant) references to his brief, which, upon careful review, contain nothing resembling his arguments before the Court.

Larceny, a common law crime, is "the wrongful or fraudulent taking of another's property without his permission and with the intent to permanently deprive the owner of that property." *Brown v. Commonwealth*, 54 Va. App. 107, 119 (2009) (quoting *Britt v. Commonwealth*, 276 Va. 569, 574 (2008)). Grand larceny, as defined in the current version of Code § 18.2-95, includes "simple larceny not from the person of another of goods and chattels of the value of $1,000 or more." Code § 18.2-95.[5]

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it."'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). The reasonableness of a defendant's alternative hypothesis of innocence is determined by the factfinder. *See Gerald v. Commonwealth*, 295 Va. 469, 482 n.8 (2018) ("[T]he factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." (alteration in original) (quoting *Moseley v. Commonwealth*, 293 Va. 455, 464 (2017))). The "reasonable hypothesis" principle does not set out a different standard for assessing criminal agency, but rather it is "simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Moseley*, 293 Va. at 464 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

---

[5] There is no dispute that the amount here exceeds the threshold for grand larceny under any version of Code § 18.2-95. The current $1,000 threshold went into effect in July 2020. 2020 Va. Acts ch. 401. At the time Chittum took the money belonging to her mother, the threshold amount was $200. 2018 Va. Acts ch. 764 (raising threshold from $200 to $500 effective July 1, 2018).

A. *Claim of Right*

Chittum's first argument — that by virtue of her being a joint account holder and having power of attorney, she had a claim of right to the transferred money — fails for several reasons. Virginia law is clear that being named as an owner in a joint account does not provide license to drain funds belonging to or contributed by another account holder. "A joint account belongs, during the lifetimes of all parties, to the parties *in proportion to the net contributions by each* to the sums on deposit . . . unless . . . there is clear and convincing evidence of a different intent." Code § 6.2-606(A) (emphasis added). It is undisputed that most of the money in the Member One account came from insurance and Social Security payments made to Anita and that Chittum had contributed at most around $100 of the over $200,000 that was once in the account. No clear and convincing evidence exists to suggest there was a "different intent"; thus, Code § 6.2-606(A) states that the ownership of the funds in the Member One account should be allocated "in proportion to the net contributions" of Anita and Chittum. Accordingly, the $163,600 was Anita's property that Chittum had no right to transfer to herself solely by virtue of being a joint account holder.

Chittum argues that Anita's execution of the general power of attorney evinces "clear and convincing evidence of a different intent" under the statute. Yet Chittum's role as Anita's agent with power of attorney did not authorize her to transfer Anita's money against Anita's wishes and contrary to her best interest. Under Code § 64.2-1612, someone who has accepted power of attorney shall, among other duties: "[a]ct in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest;" "[a]ct in good faith;" "[a]ct only within the scope of authority granted in the power of attorney;" and "[a]ct loyally for the principal's benefit." Code § 64.2-1612(A), (B)(1). The circuit court, reviewing the evidence, noted that Chittum had an obligation to preserve the assets

- 6 -

of her mother; those assets were essential to "Anita's long term financial security," because they were "all she had to live on for the rest of her life." By transferring the funds to herself, Chittum acted contrary to, and outside the scope of, her duties owed to Anita acting as her agent pursuant to the power of attorney.

## B. *Gift*

Chittum's alternative theory of innocence is, contrary to her mother's testimony before the circuit court, that Anita had given Chittum the $163,600 as a gift.

"The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Here, the circuit court, as factfinder, considered the evidence presented at trial, and concluded that it did not support a finding that Anita intended to give $163,600 of her money to Chittum. It expressly found Anita to be a "credible and persuasive" witness, and, in so doing, rejected Chittum's theories of innocence. It credited Anita's testimony that she did not authorize this "gift" because that money was "all [she] had to live on." It also concluded that the transfer of this money "was not consistent with either Anita's reasonable expectations or her best interests." These findings are supported by the evidence, and the conclusions drawn from them are not plainly wrong; accordingly, the circuit court did not err in finding the evidence sufficient to support Chittum's grand larceny conviction.

### III. CONCLUSION

No legal authority supports Chittum's assertion that her having power of attorney, or being a joint account holder, authorized her to transfer $163,600 of her mother's money to herself in this instance. The circuit court did not err in crediting Anita's testimony that the transfer was not a gift, but rather was contrary to her best interests and wishes. Accordingly, we affirm Chittum's conviction for grand larceny.

*Affirmed.*