COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, White and Frucci
Argued at Lexington, Virginia


ALVAH BAILEY

MEMORANDUM OPINION[*] BY
v.         Record No. 0196-24-2              JUDGE CLIFFORD L. ATHEY, JR.
                                            DECEMBER 3, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Tracy W.J. Thorne-Begland, Judge

(Matthew M. Gravens; Winslow, McCurry & MacCormac, PLLC,
on brief), for appellant.  Appellant submitting on brief.

Jason D. Reed, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Richmond ("trial court") convicted

Alvah Bailey ("Bailey") of first-degree murder and of using a firearm while committing murder.

Following a sentencing hearing, the trial court sentenced Bailey to serve 80 years with 23 of

those years suspended on the murder conviction, with 3 additional years to serve on the firearm

conviction.  On appeal, Bailey challenges the sufficiency of the evidence identifying him as one

of the assailants.  Bailey also assigns error to the trial court for limiting his cross-examination of

a witness.  Finding no error, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

UNPUBLISHED

## I. BACKGROUND[1]

On December 16, 2021, V.H. was shot to death while walking on a sidewalk in the 2300 block of Bethel Street in the City of Richmond. Surveillance footage reflected that the assailants, while driving in a black Infinity sedan, came to a stop directly across from where V.H. was standing on the sidewalk. The surveillance footage showed V.H. beginning to run, but after only a few steps, V.H. fell onto the sidewalk. The footage then showed the black sedan drive closer to V.H.'s location on the sidewalk. From the window of the front passenger seat, the footage captured a hand wielding a firearm firing in the direction of V.H. several more times before the sedan fled the scene. The black sedan then began speeding down the grassy median of Sussex Street before stopping at the intersection of Sussex and Whitcomb Street. The footage then showed three men exiting the black sedan before running away down Whitcomb Street. Additional surveillance footage from a second camera showed the clothing worn by the assailants as well as the physical builds of the perpetrators fleeing on foot.

In a nearby alleyway, investigators also found a rifle and two handguns inside a trashcan.[2] In addition, on the ground near the trashcan, investigators found two purple latex gloves, one of which was torn into three pieces. Investigators were also able to locate the abandoned black sedan. Inside the vehicle, they found: 1) three cups, 2) three straws, 3) a food container, 4) a receipt from a Cook Out fast-food restaurant, 5) two cell phones, and 6) a set of Virginia license plates. The

---

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Ray v. Commonwealth*, 74 Va. App. 291, 307 (2022) (alteration in original) (quoting *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021)).

[2] A ballistics analysis matched these three firearms to bullets and cartridge casings found at the shooting scene.

receipt from Cook Out reflected that three drinks and several food items had been purchased at the restaurant's drive-thru about 45 minutes before the shooting.

The investigators subsequently submitted the latex gloves, drink straws, and gun swabs to the Virginia Department of Forensic Science ("Department") for DNA analysis. The DNA analysis found a mixture of Steven A. Clark's ("Clark") DNA and other contributors too minor to match on the two handguns. The Department also found Bailey's DNA on the straw from the backseat, Jeffrey Munford's ("Munford") DNA on the straw from the front driver side cup holder, and Victor Coney's ("Coney") DNA on the straw from the front passenger side cup holder. The Department was unable to successfully analyze the gloves.

Based upon the results of the investigation, Bailey, Munford, and Coney were charged for V.H.'s murder; officers arrested Munford in Richmond, and Bailey and Coney were arrested in Broward County, Florida. Clark was also arrested and charged with unlawful firearm possession.

At trial, the lead investigator, Detective Amira Sleem ("Detective Sleem"), testified about the investigation and subsequent arrests. Defense counsel then cross-examined Detective Sleem about her prior interview with Clark. After Detective Sleem testified that Clark had denied any knowledge of, or acquaintance with, the other arrestees, the Commonwealth objected to defense counsel's further questioning based upon the questioning eliciting hearsay. The trial court sustained the motion. Defense counsel then asked if Clark had ever referred to V.H. as "the F-ing devil." The Commonwealth again objected. When asked by the trial court what purpose the question served, defense counsel replied that it was intended to establish Detective Sleem's "impression of [Clark's] truthfulness and veracity" during the interview. The trial court then sustained the objection, noting that Clark "needs to be present if you want that."

The Commonwealth also adduced evidence establishing that Bailey owned both cell phones seized from the vehicle. Law enforcement had also extracted call logs and message data from one

- 3 -

of Bailey's cell phones showing that Bailey had saved Coney's phone number as "Vic Nephew" in text messages. In addition, evidence from the cell phone showed that Coney referred to Bailey as "Unc" and the call logs further reflected that Coney had called Bailey four times shortly before the Cook Out food purchase.

Bailey testified that he flew with Coney to Richmond on December 16, 2021, to help Coney drive a car back to Florida. He further asserted that Clark picked up Bailey and Coney from the airport and drove them to a hotel. There, Bailey testified, a third person whom he did not know, picked up Bailey and Coney to get food at Cook Out. Bailey stated that after buying the food, a fourth unknown person got into the black sedan. Bailey then claimed that he alone was dropped off at a nearby Dollar General, and while he was shopping, the black sedan with the three remaining men left the parking lot of the Dollar General. Bailey also testified that he had left his two cell phones in the sedan, and thus, he was unable to call Coney after exiting the Dollar General. When Coney did not return to the hotel, Bailey testified that he traveled to his home in Florida by bus. Bailey also claimed that he solely referred to Coney's 12-year-old son as "nephew" and that only the child referred to him as "Unc" using Coney's cell phone.

During cross-examination the Commonwealth confronted Bailey with his text message from Coney that stated "Unc he don't go to strip clubs. So I told him Bar Rita[.]" In response, Bailey admitted that Coney sometimes referred to Bailey as "Unc" in some of the text messages. In rebuttal, Detective Sleem testified that although Bailey had claimed that he told the detective that he only visited Richmond when it was cold, Bailey had stated many times during the interview that he "didn't know" when he was last in Richmond and could not describe the temperature during any visit. Detective Sleem also testified that Bailey had previously told him that he traveled to Richmond to gamble in D.C. and made no mention of Coney or driving a

vehicle back to Florida. The Commonwealth also introduced Bailey's 11 felony convictions as impeachment evidence.

At the conclusion of all the evidence, Bailey moved to strike the charges against him, which the trial court denied. Following their deliberations, the jury convicted Bailey of first-degree murder and of using a firearm to commit that felony. Following a sentencing hearing, the trial court sentenced Bailey to 80 years' incarceration with 23 years suspended for murder, and 3 years' incarceration for use of a firearm. Bailey appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

    B. *Bailey has waived his assignment of error regarding the admission of Clark's statement.*

Bailey contends that the trial court erred by refusing the admission of Clark's alleged statement through the testimony of Detective Sleem. In support, he asserts that admission of the statement would not have violated the rule against hearsay because he did not seek to admit the statement for the truth of the matter asserted. However, since Bailey failed to present this argument at trial, the assignment of error is waived.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Id.* (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Bethea*, 297 Va. at 743). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.*

On appeal, Bailey asserts that the trial court erred by sustaining the Commonwealth's objection to his question about whether Clark had previously told Detective Sleem that V.H. was the "F-ing devil." On brief, Bailey contends only that the answer was admissible to establish

Clark's motive to murder V.H., however, defense counsel made no such contention at trial. When specifically asked to address the Commonwealth's objection, counsel stated only that the answer was admissible for the purpose of permitting Detective Sleem to opine on Clark's truthfulness. "[N]either an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Bethea*, 297 Va. at 744 (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). Thus, we will not address Bailey's untimely argument for the first time on appeal. Rule 5A:18. In addition, Bailey "does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and th[is] Court will not apply the exceptions *sua sponte*." *Hogle*, 75 Va. App. at 756. For these reasons, Bailey's assignment of error is waived.

C. *The evidence was sufficient to support Bailey's convictions.*

Bailey next contends that the evidence was insufficient to prove he was in the black sedan at the time of the murder. He asserts that here the circumstantial evidence only showed that he had been in the vehicle at some point, not that he participated in the murder. We disagree.

"[T]he Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013)). "We review the fact finder's determination regarding the identity of the perpetrator considering 'the totality of the circumstances.'" *Id.* (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002)).

Identity may be proved by direct or circumstantial evidence. *See Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination."

*Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003). "The pertinent question in this appeal is whether a rational factfinder, in light of all the evidence, could have rejected [the defendant's] theories of innocence and found him guilty beyond a reasonable doubt." *Walker v. Commonwealth*, 79 Va. App. 737, 748 (2024) (alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)).

Here, the Commonwealth established through DNA evidence that Bailey was one of three people in the black sedan when food and drink was purchased from the drive-thru at Cook Out less than an hour before the shooting. As evidenced through his phone data, Bailey had a close relationship with Coney, whom the DNA evidence also established was in the car shortly before V.H. was shot. The jury also observed video footage of the shooting as well as footage of the three men who fled the sedan shortly after the black sedan sped away from the scene. Importantly, Bailey's two cell phones were left on the backseat of the fleeing vehicle which was later abandoned.

Although Bailey testified in his own defense and attempted to explain away the Commonwealth's evidence, the Commonwealth successfully impeached much of his testimony. For example, Bailey asserted that he had no significant relationship to Coney and the terms "nephew" and "unc" were limited to use in conversation with Coney's child. But the text messages belied his account since *Coney referred to Bailey* in the text messages as "Unc," Bailey admitted that Coney would sometimes refer to him as "Unc," and Coney's phone number was saved in Bailey's phone "Vic Nephew." Bailey further testified that he was in Richmond to help Coney move a vehicle, but he had previously told Detective Sleem that he came to Richmond to gamble in D.C. "The factfinder need not believe an accused's explanation and, if that explanation is not believed, may infer that the accused is lying to conceal his guilt." *Abdo v.*

*Commonwealth*, 64 Va. App. 468, 479 n.5 (2015) (quoting *Phan v. Commonwealth*, 258 Va. 506, 511 (1999)).

"[T]he combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Garrick*, 303 Va. at 184 (second alteration in original) (quoting *Moseley*, 293 Va. at 463). Considering the combined force of the DNA and phone evidence establishing Bailey's and Coney's presence in the black sedan shortly before the shooting as well as Bailey's impeached testimony, and the video footage of the fleeing assailants, a rational factfinder could have concluded beyond a reasonable doubt that Bailey participated in the murder of V.H. while possessing and using a firearm. Thus, the evidence in the record was sufficient to support Bailey's convictions.

III. CONCLUSION

For the foregoing reasons, we find no error. Therefore, we affirm the trial court's judgment.

*Affirmed.*