COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge O'Brien and Senior Judge Humphreys
Argued at Richmond, Virginia


SAMUEL LEE WHITFIELD, JR.

                                   MEMORANDUM OPINION* BY
v.        Record No. 1755-23-1        CHIEF JUDGE MARLA GRAFF DECKER
                                        MAY 27, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Tasha D. Scott, Judge

(Lenita J. Ellis, on brief), for appellant. Appellant submitting on
brief.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Samuel Lee Whitfield, Jr., appeals his convictions of malicious shooting within an

occupied building, possession of a firearm by a violent felon, and three counts each of attempted

malicious wounding and use of a firearm in the commission of a felony in violation of Code

§§ 18.2-26, -51, -53.1, -279, and -308.2. The offenses stem from a shooting into a residence

while the family was at home. Whitfield argues that the Commonwealth's evidence was not

sufficient to support his convictions because the witnesses against him were not credible. In

addition, Whitfield contends the evidence was insufficient to prove that he was the person who

fired the gun, that he acted with the requisite intent, and that he had possession of a firearm. For

the following reasons, we affirm the convictions.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On the night of May 6, 2020, Moneak Blount awoke to the sound of Whitfield's knocking at her front door. Through her bedroom window, Blount asked who was there. Whitfield identified himself as "LJ" and asked for her husband. As they talked, Whitfield started walking toward the bedroom window. Seeing that he was holding a gun, Blount backed away. She grabbed her daughter and ran from the room, hearing gunshots as she did so. Blount's husband, Jason Sinclair, got out of bed and moved Blount and their daughter to the bathtub for safety. He then went into the kitchen to get a knife. While Sinclair was in the kitchen, Whitfield shot through the kitchen window.

Sinclair called 911, and Detective Alexander Benshoff with the Norfolk Police Department arrived at the house. Investigators found two places where bullets had entered the home. The door of Sinclair's car also had a bullet hole in it, and one of the windows was broken.

Two days after the incident, as part of his investigation, Benshoff entered one of the bedrooms at Whitfield's residence. A rifle was leaning against the wall. During an interview, Whitfield admitted to the detective that he was present for the shooting but denied being a part of it. He claimed that he had gone to the house because Sinclair had stolen money from him earlier that day. Whitfield also admitted that the rifle had been in his possession "for several days" and was the firearm used in the shooting. According to Whitfield, however, another person had it at the time of the shooting and that person fired it into Blount and Sinclair's home. At the time, Whitfield did not identify that person.

---

[1] When reviewing the sufficiency of the evidence supporting a conviction, the Court views the evidence in the light most favorable to the Commonwealth. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 506 (2023). In applying this standard, the Court "discard[s] any . . . conflicting evidence and regard[s] as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* at 491 n.1.

The Commonwealth charged Whitfield with a number of offenses stemming from the shooting. At the ensuing bench trial, he pleaded guilty to misdemeanor destruction of property and not guilty to the other charges. Blount and Sinclair each testified against Whitfield, identifying him as the person who fired a gun into their home.

After the Commonwealth presented its case-in-chief, Whitfield testified in his defense. He said that he went to Blount and Sinclair's house because Sinclair stole money from him earlier in the day. According to Whitfield, he did not bring a gun, much less fire one. Contrary to his interview with the police, he denied ever having a gun. Whitfield explained that the person who discharged the firearm had accompanied him. He also denied shooting the car window and said instead that he broke it with a tire iron.

Whitfield made a motion to strike the charges and later renewed that motion. He challenged the sufficiency of the evidence supporting the witness identification of him as the shooter, proof of his intent to harm the victims, and proof of his possession of the firearm. The court denied the motion.

The court found Whitfield guilty of three counts of attempted malicious wounding, three counts of use of a firearm in the commission of a felony, and one count each of shooting into an occupied building, possession of a firearm by a violent felon, and misdemeanor destruction of property.[2] He was sentenced to thirty-two years and twelve months of incarceration, with eighteen years and twelve months suspended.

ANALYSIS

Whitfield challenges the sufficiency of the evidence on four grounds. First, he argues that the eyewitness testimony was not credible. Second, he contends that the Commonwealth failed to prove that he was the person who discharged the rifle. Third, he argues that the evidence did not

---

[2] Whitfield was found not guilty of shooting in a public place.

establish that he acted with the specific intent to wound someone in the house. Fourth and finally, he suggests that the Commonwealth failed to prove he possessed the firearm.

## I. Standard of Review

On review of the sufficiency of the evidence to support a conviction, this Court will affirm the decision unless the trial court was plainly wrong or the conviction lacked evidence to support it. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 506-07 (2023). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Hogle v. Commonwealth*, 75 Va. App. 743, 753 (2022) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "Reasonable inferences drawn by the factfinder 'cannot be upended on appeal unless'" they are "'so attenuated that they push into the realm of *non sequitur*.'" *Commonwealth v. Wilkerson*, ___ Va. ___, ___ (Feb. 20, 2025) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018)). In conducting its review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). In the end, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

In addition, in evaluating the sufficiency of the evidence, a reviewing court "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003)). "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to

- 4 -

determine the[] credibility[ and] weight to be given their testimony, [as well as] the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). These principles apply the same way in a bench trial, such as this one, as they do in a jury trial. *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017).

This legal framework along with the factual backdrop guide our analysis considering the specific sufficiency challenges raised by Whitfield.

## II. Credibility of the Witnesses

Whitfield contends that the testimony given by Blount and Sinclair was inherently incredible and points to certain inconsistences between their accounts in support of his argument.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). A reviewing "court 'must accept "the [fact finder]'s determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'"'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).

"Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or [it is] 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being

- 5 -

inherently incredible as a matter of law." *Id.* As such, "'[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

Here, Whitfield simply identifies inconsistencies between Blount's and Sinclair's accounts about the conversation at the window and what he characterizes as their "exaggeration" about how many shots were fired. These do not support reversal as a matter of law.

Blount testified that when she asked who was there, Whitfield answered "LJ." According to Blount, Whitfield then asked whether her husband was home, but she continued to ask "who." In contrast, Sinclair testified that after Whitfield identified himself as "LJ," Blount told him that Sinclair was not home and wanted to know why he was there. Blount testified that she heard "[a]bout two" shots fired as she fled the bedroom. Sinclair testified that he heard two or three shots when he was in the bedroom and that Whitfield fired again into the kitchen window. Physical evidence shows two bullets were shot into the house.

In addition, Whitfield claims certain physical evidence rendered the identification testimony inherently unreliable. He suggests that Sinclair could not have seen clearly out the kitchen window due to the window coverings and "that part of the house was in darkness contrary to [Sinclair's] testimony." Sinclair testified that his kitchen blinds were open and that the streetlight illuminated where Whitfield stood outside. When asked about the curtains, Sinclair explained the material was sheer and he could "see right through" them. As Whitfield points out, the police photograph of the exterior of the kitchen windows does not capture the interior of the house.

These minor inconsistencies articulated by Whitfield do not render the testimony of the victims incredible as a matter of law. *See Juniper*, 271 Va. at 415. It is not unreasonable for Blount and Sinclair, who were disturbed at night and confronted by a frightening situation, to have slightly different recollections of Blount's conversation with Whitfield. Similarly, to the extent that

Blount's testimony that Whitfield fired "about two shots" and Sinclair's testimony that Whitfield fired a total of three or four shots might reflect the view that more than two shots were fired into the house, such is easily understandable in light of the disturbing nighttime confrontation. The fact that both victims' testimony is consistent with the possibility that Whitfield fired into the house more than twice can be readily explained by the heightened emotional state they no doubt experienced when someone fired a gun into their home at them and their daughter. Further, the fact that the photograph of the exterior of the house did not capture an image of the interior of the kitchen through the window does not mean that a person standing inside could not see outside through the window. The photographic exhibits show that the curtain material was sheer and transparent. In addition, although the blinds were lowered, they were positioned laterally to allow for visibility. Simply put, these minor inconsistences were for the factfinder to resolve. *See Kelley*, 69 Va. App. at 626.

Based on well-established principles, the victims' testimony was not inherently incredible.

### III. Identity as the Shooter

Whitfield posits that because neither Blount nor Sinclair saw him fire the weapon, the Commonwealth did not exclude the reasonable hypothesis of innocence that someone else shot into the house as he claimed in his testimony.

It is axiomatic that "[a]t trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013)); *see Moseley*, 293 Va. at 464. On appeal, however, the Court reviews the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances" within the strict parameters of such review. *See Shahan*, 76 Va. App. at 258 (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002)).

Here, both Blount and Sinclair readily identified Whitfield as the person with a gun who came to their house on the night of the shooting. Whitfield does not challenge the identification of him as the person who was outside their house engaging Blount in conversation. Instead, he emphasizes that neither Blount nor Sinclair saw the actual shooting. Whitfield suggests that each witness's account fails to identify him as the criminal actor.

We hold the totality of the circumstances sufficiently proved that Whitfield was the shooter. The trial court credited both the victims' identification of Whitfield as the man who came to their house holding a gun.[3] *See Moseley*, 293 Va. at 465 (holding that the evidence was sufficient to support the fact finder's rejection of the hypothesis of innocence "that someone else was the criminal agent"). Both Blount and Sinclair saw Whitfield standing outside their house holding a gun moments before shots were fired into the house.[4] And the evidence explains why Blount and Sinclair did not actually see Whitfield fire the gun. Significantly, when Blount saw Whitfield approaching the bedroom window with a firearm, she grabbed her daughter and fled from the room. Similarly, Sinclair testified that Whitfield stood outside his kitchen window holding "a long black gun" and, as soon as Sinclair stepped back from the window, shots were fired. Sinclair did not see Whitfield shoot, but he explained that he saw Whitfield "with the gun in his hand at the back window before the bullet came through the window." The victims' acts of self-preservation necessarily made it impossible for them to see the shots fired.

---

[3] The Supreme Court of Virginia has clarified the difference between an analysis of the admissibility of identification evidence, which rests on due process considerations, and "evaluating the identification within a sufficiency matrix." *Sample v. Commonwealth*, 303 Va. 2, 16 (2024).

[4] Although Blount testified that she saw a woman present with Whitfield, Blount specifically testified that she did not see the woman holding anything. Further, Whitfield did not allege the woman was the shooter, instead blaming a third person.

Although Whitfield testified he did not bring a gun to the house, the court, as the finder of fact, was tasked with assessing Whitfield's credibility. In doing so, the trial court was entitled to conclude that his testimony was false. *See Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc) ("[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." (alterations in original) (quoting *Barney*, 302 Va. at 97)), *aff'd*, 303 Va. 1 (2024); *Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (en banc) ("[T]he fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018))).

For these reasons, the evidence supports the trial court's conclusion that Whitfield did, in fact, shoot into the house.

## IV. Intent

Whitfield argues that the Commonwealth failed to prove that the shooter fired the gun with the malicious intent to maim, disfigure, disable, or kill anyone in the house. He suggests, instead, that the evidence supported the reasonable hypothesis that the shooter acted only with the intent to scare them.

To establish that Whitfield attempted to commit each of the three counts of malicious wounding, the Commonwealth had to present evidence that he attempted to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable or kill." *See* Code § 18.2-51. *See generally Watkins v. Commonwealth*, 62 Va. App. 263, 268 (2013) ("An attempt is composed of . . . the intent to commit the crime[] and a direct, ineffectual act . . . toward[] its commission." (quoting *Parsons v. Commonwealth*, 32 Va. App. 576, 582 (2000))). Plainly, malice is an element of the offense. *Ramos v. Commonwealth*,

71 Va. App. 150, 162 (2019). It is defined as "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Taylor v. Commonwealth*, 77 Va. App. 149, 174 (2023) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022)). To support the three convictions for attempted malicious wounding, the Commonwealth was required to prove that Whitfield possessed the requisite intent for each of the three victims: Blount, Sinclair, and their daughter.

"Intent is the purpose formed in a person's mind at the time an act is committed." *Welch v. Commonwealth*, 79 Va. App. 760, 768 (2024) (quoting *Johnson v. Commonwealth*, 53 Va. App. 79, 100 (2008)). Whether a defendant acted with the requisite intent is generally a question for the fact finder. *See id.* Additionally, the trier of fact may infer that a person "intends the natural and probable consequences of his or her acts." *Brown v. Commonwealth*, 74 Va. App. 721, 734 (2022) (quoting *Walker v. Commonwealth*, 47 Va. App. 114, 121 (2005), *aff'd*, 272 Va. 511 (2006)). "A defendant's intent may be proved by circumstantial evidence, including the defendant's statements and conduct." *Welch*, 79 Va. App. at 768. Further, "[m]alice may be inferred from the deliberate use of a deadly weapon unless . . . there is reasonable doubt as to whether malice existed." *Witherow v. Commonwealth*, 65 Va. App. 557, 566-67 (2015) (first alteration in original) (quoting *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015)).

In reviewing the sufficiency of the evidence, a fact finder is permitted to give equal weight to direct and circumstantial evidence, "without distinction, in reaching its determination." *Moseley*, 293 Va. at 463 (quoting *Hudson*, 265 Va. at 513). In the instant case, circumstantial evidence is key. And the law makes clear that "[c]ircumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt

that a defendant is guilty." *Rams*, 70 Va. App. at 27 (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, the circumstantial evidence, viewed under the appropriate legal standard, was sufficient to prove that Whitfield acted with the intent to harm Sinclair and his family, not just scare them. By his own account, Whitfield went to the house because he believed that Sinclair had stolen money from him earlier that day. After briefly speaking with Blount, Whitfield first shot into the bedroom where Blount and her daughter stood. The bullet hit the doorframe where the daughter had been only a moment before. Whitfield then shot into the kitchen where Sinclair stood, looking at him through the window. The fact that he did not wound anyone does not negate his intent to do so. This evidence supports the inference that Whitfield tried to shoot Blount, Sinclair, and their daughter with the intent to maim, disfigure, disable, or kill them.

Whitfield specifically challenges the sufficiency of the evidence proving his intent to hurt the daughter. He suggests that no evidence proved he knew that she existed and one cannot "have the specific intent to maim, disable, disfigure, or kill a person they do not know exists."[5] The record, however, supports a finding that he knew the daughter was inside the house.

When Blount first spoke to Whitfield from her bedroom window, he stood on the front porch. The porch was several steps above ground level and only a short distance from the window. A photograph of the front of the house was admitted into evidence. According to Blount, as they talked, Whitfield "came around to the window." The daughter was standing in the doorway to the bedroom while the conversation took place. As Blount scrambled to get out of view of the window, she told Sinclair that Whitfield had a gun. Blount and her daughter ran out of the room immediately before Whitfield fired the rifle through the bedroom window. One

---

[5] Whitfield correctly notes that transferred intent does not apply to attempt crimes in Virginia. *See Fary*, 77 Va. App. at 346.

- 11 -

of the bullets hit the frame of the doorway in which the daughter had been standing only a moment before. This evidence is sufficient to support the conclusion of the trial court—as the trier of fact—that Whitfield knew the daughter was present.

Based on this record, the evidence was sufficient to support the convictions for attempted malicious wounding of all three victims.

## V. Possession of the Firearm

Whitfield argues that the evidence was insufficient to prove he possessed the firearm used to fire into the house.

"It is well-established that to obtain a conviction for . . . possessory offenses, the Commonwealth must produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the [item] with knowledge of its nature and character." *Commonwealth v. Garrick*, 303 Va. 176, 183 (2024); *see also* Code § 18.2-308.2 (proscribing possession of a firearm by someone previously convicted of a felony). "Possession can be either actual or constructive." *Garrick*, 303 Va. at 183.

Here, both Blount and Sinclair testified that they saw Whitfield holding a gun moments before shots were fired. As discussed above, the evidence supports the inference that Whitfield used that firearm to shoot into the home. In addition, he admitted to Benshoff that the rifle had been in his possession at another time. Although Whitfield testified at trial that he never had the rifle in his possession, the trial court was "entitled to disbelieve [his] self-serving testimony . . . and to conclude that [he was] lying to conceal his guilt." *See Maust*, 77 Va. App. at 703 (quoting *Speller*, 69 Va. App. at 388); *see also Rich v. Commonwealth*, 292 Va. 791, 802 (2016) ("The trial court, sitting as fact-finder, may disbelieve the self-serving testimony of the accused."). Based on this evidence, the trial court could reasonably conclude that Whitfield had actual

- 12 -

possession of the rifle at the time of the offenses. *See Clodfelter v. Commonwealth*, 218 Va. 619, 622 (1977) (noting that generally "[p]hysical possession giving the defendant 'immediate and exclusive control' is sufficient" to prove possession of an item (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970))).

For these reasons, the evidence was sufficient to support the convictions.

CONCLUSION

The testimony of Blount and Sinclair was not inherently incredible. Further, the evidence was sufficient to support the trial court's findings that Whitfield was the shooter, that he acted with the requisite intent, and that he had possession of the firearm. Consequently, we affirm the convictions.

*Affirmed.*